**Jane Von RICHTHOFEN, Plaintiff,**

v.

**FAMILY M. FOUNDATION LTD. and Elizabeth Manus a/k/a Libby Manus, Defendants.**

**No. 05 Civ. 3786(NRB).**

United States District Court,
S.D. New York.

Sept. 12, 2005.

---

Anusia L. Gayer, Lowenstein Sandler PC, New York, NY, for Ninotchka Manus.

Rachael L. Warren, Davidoff Malito & Hutcher LLP, New York, NY, for Defendants.

## MEMORANDUM AND ORDER

BUCHWALD, District Judge.

Ninotchka Manus ("Ninotchka") has removed this proceeding from New York Supreme Court pursuant to 28 U.S.C. § 1452(a) as related to her bankruptcy proceeding. Defendants Family M. Foundation Ltd. ("Family M.") and Elizabeth Manus ("Libby") have moved for either remand of this action or abstention.[1] For the following reasons, defendants' motion is granted.

## BACKGROUND [2]

Although this action is nominally a dispute over the ownership of Family M., in essence it is a family quarrel over money. At the center of this controversy is Allen Manus, an international financier who died in November of 2003. Prior to his death, Mr. Manus had established Family M. as a Cayman Islands corporation and divided its shares equally between his daughter from his first marriage, Jane Von Richthofen ("Von Richthofen"), his niece, Ellen Sue Goldberg ("Goldberg"), and his third wife, Libby. The current status of Family M., both its ownership and its assets, is the key dispute between the various individuals.

In 1994, Family M. loaned Ninotchka, Mr. Manus's second wife, $400,000 (the "Loan"). The terms of the Loan were set forth in an agreement (the "Loan Agreement") signed by Mr. Manus for Family M. and by Ninotchka. The Loan Agreement provided that Ninotchka would provide as collateral for the Loan certain valuable jewelry (the "Jewelry"). The Loan further provided that Ninotchka had the exclusive right to sell the Jewelry for a defined time period, and, afterwards, that Family M. could sell the Jewelry and use the proceeds to repay the Loan. Ninotchka did not repay the Loan to Family M. as required by the Loan Agreement, nor did Family M. sell the Jewelry to repay the Loan as stated in the Loan Agreement.

In 1998 Family M. initiated a lawsuit in New York State Court against Ninotchka for breach of the Loan Agreement (the "Family M. Action"). According to the allegations in that complaint, in 1996 Family M. had authorized the release of the

---

1. As certain litigants share a common surname, we refer to those individuals by their given names.

2. Except where noted, the following facts are not in dispute.

Jewelry to Ninotchka solely to allow her to arrange for a sale of the Jewelry by Harry Winston. When the Jewelry could not be sold by Harry Winston, Ninotchka retained possession of the Jewelry and attempted to sell the Jewelry on her own, an arrangement which Family M. allowed. Hutcher Aff. Ex. F, Compl. ¶ 10. However, in late 1997 or early 1998, Ninotchka allegedly attempted to sell the Jewelry secretly and deposit the proceeds in a bank account in Europe beyond the reach of Family M. *Id.* ¶ 11. Shortly after commencement of the suit, Family M. and Ninotchka entered into a settlement stipulation resolving the dispute. According to the terms of the settlement, Ninotchka was granted an additional nine months to sell the Jewelry in order to repay the Loan, and in return Ninotchka provided Family M. with her apartment as additional collateral. If within nine months Ninotchka failed to repay the Loan, Family M. could sell Ninotchka's apartment to cover the debt. Despite the terms of the settlement, once again Ninotchka did not repay the debt to Family M., nor did Family M. force a sale of her apartment.

Up until 2000, there is little dispute regarding the sequence of events. Beginning in 2000, there are two contested transactions involving the Loan and Family M. First, Ninotchka alleges that in 2000 Mr. Manus orally "forgave" her debt to Family M., an account disputed by Libby. Second, in late 2000, both Ms. Von Richthofen and Ms. Goldberg "tendered back all of [their] respective share interest in Family M. to effectuate its dissolution." Warren Reply Aff., Ex. C. ¶ 4 (Von Richthofen Aff.). Family M. did not dissolve, however, leaving the ownership of the corporation in doubt. According to Ms. Von Richthofen, it was her understanding that she and Ms. Goldberg "retained any beneficial interest in Family M., if any." *Id.*

After the death of Mr. Manus in 2003, Libby, claiming to be the sole shareholder of Family M., returned to state court to enforce the terms of the settlement and foreclose on Ninotchka's apartment.[3] On June 25, 2004, Justice Fried of New York Supreme Court, Manhattan County, issued a judgment in the Family M. Action ordering Ninotchka to deliver her apartment shares to Family M. pursuant to the terms of the settlement agreement. Justice Fried addressed the disputed issues discussed above, but ultimately held that the terms of the settlement agreement prevented any oral modification of the settlement by Mr. Manus, and that the settlement was enforceable against Ninotchka regardless of Libby's ownership interest in Family M. Berman Decl., Ex. M. This judgment, entered June 25, 2004, was a final disposition of the Family M. Action.

On July 22, 2004, Ms. Von Richthofen commenced a state court action (the "Von Richthofen Action") in response to Libby's efforts as a shareholder of Family M. to collect the debt owed by Ninotchka. In the Von Richthofen Action, Ms. Von Richthofen sought a declaratory judgment that she was the majority shareholder of Family M., not Libby. Ms. Von Richthofen alleged that she owned two-thirds of Family M.'s stock, consisting of her initial one-third interest in Family M. plus the one-third interest that Ms. Von Richthofen received from Ms. Goldberg on July 8, 2004.

On January 18, 2005, facing the imminent sale of her apartment to satisfy the Family M. debt, Ninotchka filed for federal bankruptcy under Chapter 11. On February 23, 2005, Ninotchka purchased Ms.

---

**3.** The stipulation of settlement stated that the New York State Court would retain continuing jurisdiction to enforce the terms of the settlement.

Von Richthofen's alleged majority interest in Family M. for ten dollars, and subsequently sought leave to be substituted as plaintiff in the Von Richthofen Action. Assuming Ninotchka is substituted as plaintiff, the Von Richthofen Action is a dispute between the Mr. Manus's second and third wives over the ownership of Family M. On April 13, 2005, Ninotchka removed the Von Richthofen Action to this court as related to her bankruptcy proceeding.

### DISCUSSION

### I. Jurisdiction

 Federal courts have jurisdiction over matters that are "related to" a pending bankruptcy proceeding. 28 U.S.C. § 1334(b). "The test for determining whether litigation has a significant connection with a pending bankruptcy proceeding is whether its outcome might have any 'conceivable effect' on the bankrupt estate." *Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 114 (2d Cir.1992). Defendants do not seriously challenge the relatedness of this action to Ninotchka's bankruptcy, as there is no doubt that this proceeding could have a conceivable effect on Ninotchka's estate. As noted above, Ninotchka's largest asset, her apartment, is currently subject to sale by her largest creditor, Family M., for repayment of the Loan. Accordingly, resolution of whether Ninotchka has successfully become the majority owner of her largest creditor will have a direct bearing on the management of her estate. Therefore, we find that the Von Richthofen Action is "related to" Ni-

notchka's bankruptcy and there is jurisdiction pursuant to section 1334(b).

### II. Mandatory Abstention

 The doctrine of mandatory abstention requires the party seeking remand to demonstrate that:

> (1) the motion to abstain was timely; (2) the action is based on a state law claim; (3) the action is related to but not arising in a bankruptcy case or arising under the Bankruptcy Code; (4) Section 1334 provides the sole basis for federal jurisdiction; (5) an action is commenced in state court; (6) that action can be timely adjudicated in state court.

*See* 28 U.S.C. § 1334(c)(2); *In re Adelphia Commc'ns Corp. Sec. and Derivative Litig.*, No. 03 MDL 1529, 2005 WL 1404796, at *1 (S.D.N.Y. Jun.14, 2005). The parties agree that four of the six factors apply to this action but dispute whether: (i) this action is based on a state law claim, and (ii) whether it can be timely adjudicated in state court. For the reasons discussed below, we find mandatory abstention applicable.[4]

 Mandatory abstention "applies only to cases 'related to a case under Title 11 but not arising under Title 11 or arising in a case under Title 11'; that is, abstention is only mandated with respect to non-core proceedings." *In re S.G. Phillips Constructors, Inc.*, 45 F.3d 702, 708 (2d Cir.1995); *see also Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 447 (2d Cir.2005).[5] In general, non-core proceedings "involve disputes over rights that . . . have little or no relation to the Bankruptcy Code, do not arise under federal bankrupt-

---

4. Defendants also argue that this Court should remand this action to state court under the doctrines of equitable remand and discretionary abstention. Because we find mandatory abstention applies, we do not reach those issues.

5. For a discussion of the origins of core/non-core distinction, *see In re U.S. Lines, Inc.*, 197 F.3d 631, 636 (2d Cir.1999).

cy law and would exist in absence of a bankruptcy case." *In re Complete Mgmt., Inc.*, No. 02 Civ. 1736, 2002 WL 31163878, at *2 (S.D.N.Y. Sep.27, 2002) (citing *Wechsler v. Squadron, Ellenoff, Plesent, & Sheinfeld LLP*, 201 B.R. 635, 639 (S.D.N.Y. 1996)). By contrast, core proceedings "invoke a substantive right created by federal bankruptcy law and that would not exist outside of a bankruptcy case." *In re FMI Forwarding Co., Inc.*, No. 01 Civ. 9462, 2004 WL 1348956, at *4 (S.D.N.Y. Jun.16, 2004) (internal citation and quotation omitted). Section 157(b)(2) of Title 11 of the United States Code sets out a non-exclusive list of proceedings. 28 U.S.C. 157(b)(2). These proceedings include, for example, the administration of the estate, the allowance or disallowance of claims against the estate, and counterclaims by the estate against creditors. *Id.*

 Applying the standard above, it is clear that the Von Richthofen Action is a non-core proceeding, and that mandatory abstention is applicable. The dispute is between shareholders of the Family M. corporation over the ownership of the corporation. It arose prior to any bankruptcy filing, and did not originally involve the debtor as a party. Both Ninotchka and defendants agree that the Von Richthofen Action does not arise under the Bankruptcy Code and is only "related to" the bankruptcy proceeding. Def.'s Memo. at 9, Pl.'s Opp'n at 17. There are no allegations that the action involves any issues of bankruptcy law or any other federal law, and Ninotchka acknowledges that there is no federal jurisdiction over this claim other than bankruptcy jurisdiction.[6] Finally, it is undisputed that the action was properly

commenced in New York state court prior to the Bankruptcy filing. The fact that Family M. has as one of its assets a claim against a bankrupt individual does not transform its internal shareholder battle into a core proceeding.

 If the proceeding is non-core, "the district court should refuse to abstain only if the lawsuit could not timely be adjudicated in state court." *Mt. McKinley*, 399 F.3d at 447; *see also In re S.G. Phillips Constructors, Inc.*, 45 F.3d at 708. Defendants claim that the Von Richthofen Action was proceeding promptly prior to its removal, and there is nothing in the record indicating otherwise. Prior to removal, the defendants had submitted a dispositive motion to the state court judge and consideration of that motion was interrupted only by Ninotchka's removal of the action. Upon remand, that motion will once again be pending in front of a state court judge who is familiar with the facts of this case. Familiar as we are with the work of Justice Fried, we have total confidence that his resolution of the dispute before him will not interfere with the proceeding pending in bankruptcy court.

## CONCLUSION

For the reasons stated above, defendants' motion for mandatory abstention is granted, and this action is remanded to New York State Court for further proceedings.

**IT IS SO ORDERED.**

---

6. Despite the admitted lack of federal jurisdiction, Ninotchka argues that the Von Richthofen action is not a state based cause of action because the shareholder dispute may involve issues of Caymen Islands corporate law. For the purpose of the applicability of mandatory abstention, we think the salient point is that the Von Richthofen action is not based upon any federal cause of action.